UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STRUCTURES USA LLC                                              Plaintiff

v.                                           Civil Action No. 3:22-cv-462-RGJ

UNIFIRST CORPORATION                                          Defendant

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Structures USA LLC ("SUSA") initiated this declaratory action to determine whether it has duties or obligations under a disputed contract. [DE 1]. SUSA moved to stay arbitration pending final disposition of the Complaint [DE 3-1].[1] Although Defendant UniFirst Corporation ("UFC") failed to respond, UFC filed a Motion to Stay Proceedings that could be interpreted as a response. [DE 16]. Before UFC filed its Motion to Stay Proceedings, SUSA filed a Motion for Ruling [DE 13]. SUSA also moved for an entry of Default against UFC [DE 11] and UFC responded [DE 17]. Briefing is complete, and the matter is ripe. For the reasons below, the Court **DENIES** SUSA's Motion to Stay Arbitration [DE 3-1], **DENIES AS MOOT** SUSA's Motion for Ruling [DE 13], **DENIES** SUSA's Motion for Entry of Default [DE 11], and **GRANTS** UFC's Motion to Stay Proceedings [DE 16].

## I.   BACKGROUND

SUSA is a limited liability company organized under the laws of the Commonwealth of Kentucky. [DE 1 at 1]. UFC is a Massachusetts corporation with offices in Kentucky [*id.*] that is engaged in the business of supplying uniforms and textiles. [DE 16 at 113]. On April 20, 2017,

---

[1] Although Counsel to SUSA attached a Memorandum in Support of the Motion to Stay [DE 3-1], the Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. Going forward, Counsel is advised to file a unified motion.

SUSA and UFC ("Parties") entered into a 60-month agreement [DE 1-1 ("First Agreement")] where UFC would provide uniforms for SUSA employees, as well as uniform cleaning services. [DE 1 at 2]. The First Agreement would expire 60 months after installation, which the Parties agree occurred on July 26, 2017. [*Id.* at 3; DE 16 at 13]. Therefore, the First Agreement was set to expire on July 26, 2022. [DE 16 at 13]. The Parties do not dispute that the First Agreement was a valid and binding contract. [*Id.*].

Under the terms of the First Agreement, if SUSA breached or terminated the First Agreement prior to the expiration date, a liquidated damages provisions would require SUSA to pay UFC "an amount equal to 50 percent of the average weekly amounts invoiced in the preceding 26 weeks, multiplied by the number of weeks remaining on the current term." [DE 1-1 at 12]. In spring of 2020, in part because of the COVID-19 pandemic, SUSA concluded that it must renegotiate or buyout the First Agreement for financial reasons. [*Id.*]. SUSA authorized an employee, Alana Lawson ("Lawson") to renegotiate the First Agreement. [*Id.*]. SUSA asserts that it did not, however, authorize Lawson to bind SUSA to a new contract. [*Id.*]. On March 13, 2020, Lawson executed a second agreement between SUSA and UFC [DE 1-2 ("Disputed Agreement")]. [DE 1 at 3].

The Disputed Agreement extended the term of the First Agreement by 36 months, making the new expiration date to sometime in 2025.[2] The Disputed Agreement also adopted the formula for liquidated damages from the First Agreement. [DE 1 at 4]. The First Agreement included an arbitration provision, which stated "[a]ll disputes of whatever kind between [SUSA] and [UFC] based upon past, present, or future acts, whether known or unknown, and arising out of or relating to the negotiation, formation or performance of this Agreement shall be resolved exclusively by

---

[2] UFC states that the new expiration date would be July 26, 2025 [DE 16 at 114] and SUSA notes that the new expiration date would be August 2, 2025 [DE 1 at 4].

final and binding arbitration." [DE 1-1 at 12].  The Disputed Agreement also stated "[a]ny matter not resolved through direct negotiations within 30 days shall be resolved exclusively by final and binding arbitration, conducted in the capital city of the state where [SUSA] has its principal place of business (or some other location mutually agreed)[.]"  [DE 1-2 at 16].  Arbitration under the First Agreement and the Disputed Agreement is governed by the Federal Arbitration Act ("FAA") and Commercial Arbitration Rules and Mediation Procedures.  [DE 1-1 at 12; DE 1-2 at 16].

Believing that the Parties were operating under the First Agreement, SUSA continued to pay UFC for goods and services for several months after the Disputed Agreement had been executed.  [*Id.* at 3].  On July 23, 2020, after noticing an increase in UFC's invoices, SUSA discovered that Lawson had entered into the Disputed Agreement.  [*Id.* at 4].  The Parties negotiated a temporarily reduced rate for UFC to continue providing goods and services.  [DE 1-4 at 22].  However, UFC's rates returned to that of the Disputed Agreement in January 2021.  [DE 1 at 5].  SUSA discontinued services from UFC on January 27, 2021.  [*Id.*].  In or around July 2022, UFC filed a demand for arbitration under the First Agreement and the Disputed agreement. [DE 1-7].  On September 1, 2022, SUSA filed this action for declaratory judgment to determine its obligations under the Disputed Agreement [DE 1 at 7] and moved to stay arbitration [DE 3-1]. Because UFC failed to timely respond, SUSA moved for entry of default against UFC.  [DE  11].

## II.    MOTION TO STAY ARBITRATION [DE 3-1] & MOTION TO STAY LITIGATION [DE 16]

SUSA moved to stay arbitration because it argues it is not bound by the Disputed Agreement.  [DE 3-1].  UFC did not respond.  However, UFC's Motion to Stay Proceedings [DE 16] provides facts and arguments relevant to SUSA's motion.  Therefore, the Court will rely on UFC's Motion to Stay Proceedings as a response to SUSA's Motion to Stay Arbitration.  Because

the analysis to stay proceedings is connected to the analysis to stay arbitration, the Court will decide both.

### A. **Standard**

Section 2 of the FAA "makes written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009) (quoting 9 U.S.C. § 2). "[A]rbitration is a matter of contract," meaning "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

The Supreme Court has held that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (cleaned up) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "Multiple courts, including the Eastern and Western Districts of Kentucky, have held that where the parties agree to arbitrate according to the [American Arbitration Association] rules, they provide a clear and unmistakable

4

delegation of authority to the arbitrator to decide objections related to the scope or validity of the arbitration provision." *Pitino v. Adidas Am., Inc.*, No. 3:17-CV-639-DJH, 2018 WL 3865408, at *2 (W.D. Ky. Aug. 14, 2018) (alterations in original) (collecting cases).

### B. <u>Analysis</u>

Neither party disputes the validity of the First Agreement, which was effective into 2022. [DE 1 at 2; DE 16 at 119].  The First Agreement included an arbitration provision that was subject to the FAA and the Commercial Arbitration Rules and Mediation Procedures.  [DE 1-1 at 12]. Because neither party disputes the validity of the First Agreement, its arbitration provision must be enforced.  9 U.S.C. § 2.  Moreover, the First Agreement, by incorporating the Commercial Arbitration Rules and Mediation Procedures, "provided a clear and unmistakable delegation of authority to the arbitrator to decide objections related to the scope or validity of the arbitration provision." *Pitino*, 2018 WL 3865408, at *2.  SUSA has alleged that Lawson did not have authority to execute the Disputed Agreement.  [DE 1].  Under the First Agreement, the parties agreed to binding arbitration on "[a]ll disputes of whatever kind between [SUSA] and [UFC] based upon past, present, or *future acts*, whether known or unknown, and arising out of or relating to the negotiation, formation or performance of this Agreement."  [DE 1-1 at 12 (emphasis added)]. Accordingly, the arbitrator has authority to determine whether UFC and SUSA's contentions are within the scope of the First Agreement.  *See Pitino*, 2018 WL 3865408, at *2; *see also Javitch*, 315 F.3d at 624.  Any doubt regarding the scope of issues that may be arbitrable under the First Agreement must be resolved in favor of arbitration.  *See Masco Corp.*, 382 F.3d at 627.

SUSA's Motion to Stay Arbitration goes directly to questions of formation related to the Disputed Agreement.  [DE 3-1 at 42].  SUSA similarly argues that Lawson did not have authority to enter into the Disputed Agreement.  [*Id.*].  However, these questions of contract and agency do

not affect the Parties' ability to arbitrate under the First Agreement.  While SUSA may have maintained that the Disputed Contract is not enforceable, it has never argued that the First Agreement may not be fully enforced.  The Court will not reach the merits of whether the Disputed Agreement is enforceable at this time.  Because this dispute between the Parties may fall within the scope of arbitration under the First Agreement, SUSA's Motion to Stay Arbitration [DE 3-1] is **DENIED** and UFC's Motion to Stay Proceedings [DE 16] is **GRANTED** pending the arbitrator's decision concerning the scope of the First Agreement's arbitration provision.  Having denied SUSA's Motion to Stay Arbitration, SUSA's Motion for Ruling [DE 13] is **DENIED AS MOOT**.

### III.    <u>MOTION FOR ENTRY OF DEFAULT [DE 11]</u>

SUSA moved for entry of default against UFC because UFC failed to timely respond to the Complaint.  [DE 1].  SUSA initiated this action of September 2, 2022, and served UFC on September 12.  [DE 1; DE 9; DE 10].  Pursuant to Federal Rule of Civil Procedure 12(a), UFC's answer was due on October 3, 2022.  UFC responded to SUSA's motion on October 21, 2022. [DE 11].

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Although UFC failed to timely file an answer, tardiness of a pleading is not tantamount to a failure to plead.  *See Johnson v. Barney*, No. 1:21-CV-141, 2022 WL 2713903, at *1 (S.D. Ohio July 13, 2022).  Given the Sixth Circuits "strong policy in favor of deciding cases on their merits," the Court declines to enter a default against UFC.  *See Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190,

194 (6th Cir. 1986) (considering a motion to set aside entry of default under Fed. R. Civ. P. 55(c)).

Accordingly, SUSA's Motion for Entry of Default [DE 11] is **DENIED**.[3]

## IV.    CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.    SUSA's Motion to Stay Arbitration [DE 3-1] is **DENIED**;

2.    SUSA's Motion for Ruling [DE 13] is **DENIED AS MOOT**;

3.    UFC's Motion to Stay Proceedings [DE 16] is **GRANTED** and proceedings are **STAYED** pending the arbitrator's decision regarding the scope of the First Agreement's arbitration provision; and

4.    SUSA's Motion for Entry of Default [DE 11] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

November 2, 2022

---

[3] Although the Court denies SUSA's Motion for Entry of Default, UFC is preliminarily warned. As a reminder, the Federal Rules of Civil Procedure and the Local Rules provide definite, unambiguous deadlines. The Court expects UFC to strictly abide by these deadlines going forward.